State on relation of J. Y. ALLISON, administrator, *d. b. n.* of M. A. Blackwelder, v. T. H. ROBINSON, Adm'r. with will annexed of L. C. Krimmenger and others.

*Guardian and Ward—Proceeds of Ward's Real Estate—Action to Recover by Administrator—Parties.*

1. The administrator of a deceased ward is not entitled to recover, in an action against the administrator of the deceased guardian, monies which came into the guardian's hands as proceeds of real estate belonging to the ward sold under a decree of Court for partition.

2. In such case the heirs-at-law of the deceased ward are necessary parties to the action, in order that the rights of all interested may be adjudicated in the same action.

(*State* v. *Satterfield,* 9 Ire. 358 ; *Latta* v. *Russ,* 8 Jones 111 ; *Scull* v. *Jernigan,* 2 Dev. & Bat. Eq. 144 ; *March* v. *Berrier,* 6 Ire. Eq. 524 ; *Gillespie* v. *Foy,* 5 Ire. Eq. 280 ; *Dudley* v. *Winfield,* Busb. Eq. 91 ; *Bateman* v. *Latham,* 3 Jones Eq. 35, cited and approved.)

( Smith, C. J. *Dissenting.* )

Civil Action, on an Administrator's Bond, tried at July Special Term, 1877, of Cabarrus Superior Court, before *Cloud, J.*

This is an action brought by the administrator *d. b. n.* of Margaret A. Blackwelder, deceased, to recover certain moneys belonging to her estate, which went into the hands of her guardian L. B. Krimmenger, who, dying, the defendant Robinson became his administrator with the will annexed ; against whom and the sureties upon his administration bond the present action is instituted.

Margaret, the ward, was one of the heirs at law and distributees of Wilson Blackwelder, and as such was entitled to a considerable real and personal estate, all of which came into the possession of her guardian, Krimmenger. By a decree of Court, at the instance of the guardian, the land was sold for partition, and the ward's part of the proceeds

ALLISON v. ROBINSON.

of the sale was paid over to her said guardian. The ward died, an infant and unmarried. After the pleadings were in, references were made to ascertain and report, first, the indebtedness of the late guardian to his ward; and second, to state the amount of assets in the hands of the administrator of the said guardian, applicable to the plaintiff's claim. Such proceedings were had upon these references, that reports were made and confirmed by the Court, (1) that the late guardian was indebted to the ward in the sum of $2617,90, if which sum $1132,75 was personal estate, and $1485,15 was proceeds of the sale of the land aforesaid for partition; and (2) that the defendant Robinson, administrator with the will annexed of the guardian, had in his hands $1949,80 presently applicable to the payment of this debt, and certain notes for $584,54, which had not been collected.

Upon this state of facts, the plaintiff moved for judgment against the defendant for the full amount of assets in his hands, to-wit, $2535,34. This was opposed by the defendant upon the ground that the plaintiff as administrator, in law, was not entitled to recover the proceeds of the sale of the real estate, which, not losing its character as land, upon the death of the ward, descended to her heirs at law. And of this opinion was the Court, and gave judgment for $1132,75, the amount of the personal estate only. From this judgment the plaintiff appealed.

*Messrs. R. Barringer* and *W. H. Bailey*, for plaintiff: As to recovery of real assets, cited *Moore* v. *Shields*, 68 N. C. 327; *Martin* v. *Harding*, 3 Ire. Eq. 603; *Wood* v. *Reeves*, 5 *Jones* Eq. 271; and as to judgment fixing administrator with assets, *Brown* v. *Pike* 74 N. C. 531.

*Messrs. Wilson & Son, W. J. Montgomery* and *P. B. Means*, for defendant.

BYNUM, J. (After stating the facts as above.) So the question is;—Can the administrator of the ward in this

action recover the proceeds of the sale of the real estate which had been sold for partition by the decree of the Court, and paid to the guardian?

Before the adoption of the new Constitution, when the Courts of Law and the Courts of Equity were kept distinct and separate, the Courts of Law only looked at the legal relations of the parties to the action, as debtor and creditor, and not at the fund, as impressed by its origin and history, with certain properties which in a Court of Equity imparted to it a different ownership and mode of transmission.

The law looked upon the fund as money only, no difference how derived, and upon the death of the owner, devolved it upon the administrator; while equity went further and looked into the derivation of the fund and stamped it with the character and laws of devolution of its origin. Hence in the *State* v. *Satterfield*, 9 Ire. 358, which was an action at law, the administrator of the ward, was allowed to recover upon the guardian bond the proceeds of the sale of land for partition, which had gone into the hands of the guardian. But the Court said; "Without deciding how the rights of the parties may be considered in a Court of Equity, we are of opinion that in a *Court of Law*, the defendant having received money belonging to his ward, was after her death, bound to pay it to her personal representative, and that his refusal to do so, was a clear breach of the bond, to the amount of the principal and interest." This case was followed by *Latta* v. *Russ*, 8 Jones 111. That was an action at law, upon an administration bond. There, the administrator with the will annexed died, having in his hands money arising from the sale of land, decreed to be sold for the payment of debts, being a surplus remaining after the payment of the debts, and which money belonged by law, to the persons to whom the land was devised. It was held that the administrator *d. b. n. cum. tes. an.* of the original testator, was the proper person to bring suit for

such money, and not the devisees. But this decision was rested upon the statute, Rev. Code ch. 46, § 50, which provides that: "All the proceeds of the sale of real estate which may not be necessary to pay debts and charges of administration, shall be considered real estate, and as such shall be paid by the executor or administrator to such persons as would be entitled to the land, had it not been sold;" thus making it the duty of administrators to pay over the excess of the sale of real estate, to devisees and heirs, just as it was before their duty to pay over the personal estate to legatees and distributees. "When, therefore," say the Court, "an administrator dies before he has completed the settlement of the assets, derived from the sale of the real estate, by paying debts and paying over the excess to the devisees or heirs at law, this unfinished duty cannot be performed by his administrator, for there is no privity between him and the devisees and heirs at law, and it is consequently necessary that both of the deceased persons should be represented, so that the representative of the administrator should pay over the fund to the representative of the first intestate, whose duty it is made to complete the administration, by paying off all the debts and paying over the excess, to such persons as would be entitled to the land, had it not been sold."

But what is the rule in a Court of Equity? It is the inflexible rule in equity, that the proceeds of land sold for partition, to which an infant is entitled, remain real estate, until he or she comes of age, and elects to take them as money. In *Scull* v. *Jernigan*, 2 Dev. and Bat. Eq. 144, Elizabeth Sharpe, was one of several heirs of Jacob Sharpe, and entitled to a part of his lands, which were sold for partition, by order of Court, and her part of the proceeds was paid to her guardian. She intermarried with Jernigan, and her guardian then settled with the husband and paid to him her estate, including her share of the price of the

15

land. The wife died without having had issue. The bill was brought by the heirs at law of Mrs. Jernigan, against the husband, to have the proceeds of the land declared to be real estate, and to belong to the heirs at law. It was held that they were entitled to recover. So in *March* v. *Berrier*, 6 Ire. Eq. 524, a part of the ward's land was sold by a decree of the Court, and the proceeds paid over to the guardian of the infant. The ward died intestate and an infant, and the defendant Berrier administered on her estate, and received the money from the guardian, claiming it in right of his wife as personalty. The heirs of the infant filed their bill and recovered it as real estate. This last case, in connection with *Scull* v. *Jernigan*, is important as showing the true grounds upon which Courts of Equity take jurisdiction and administer the rights of the parties. The first ground is, that when Courts of Equity order a sale of an infant's land, in order to raise money for any purpose, or for partition, they would not upon their own principles or independent of any provision by statute, allow their decrees to affect the right of succession to a surplus remaining after answering the purpose. The money stands for the land. But the second ground, by itself, seems conclusive without the aid of the general principles of equity. It grows out of the express provisions of the statute, Bat. Rev. ch. 84, § 17, which is taken from Rev. Statues ch. 85 § 7. After enacting that there may be a sale of land for division, it further enacts that if any party to the proceeding shall be an infant, &c., "it shall be the duty of the Court to decree the share of such party in the proceeds of sale, to be so invested or settled that the same may be secured to such party or his real representative." In commenting upon this statute, in *Scull* v. *Jernigan*, RUFFIN, C. J., says: "The last are the material words, as the question is, how the fund is to be treated after the death of the party when claimed by the two classes of representatives, personal or real. To

that purpose the language is unequivocal. It is secured to the real representative; and is, of course, land in this Court. * * *. Had Mrs. Jernigan died an infant and unmarried, there can be no doubt that her heirs could have followed this money in the hands of the guardian, as real estate. There is nothing in the case to alter their rights."

To the same effect is *Gillespie* v. *Foy*, 5 Ire. Eq. 280; *Dudley* v. *Winfield*, Busb. Eq. 91; *Bateman* v. *Latham*, 3 Jones Eq. 35. The principle running through all the equity cases is that the heir-at-law may follow and recover the fund in whosesoever hands it may be, whether the guardian or his administrator, or administrator of the infant or the husband. Their dealings with one another cannot change the equitable nature of the fund so as to disturb the rights of the heirs at law.

But now both legal and equitable rights are administered in the same action, upon the rational principle, that there shall not be two actions for the same subject matter, when a single action will afford a complete remedy. Assume that at law, prior to the Code, the administrator of the ward could sue for and recover a part, or all this fund, it is clear that in equity the heirs, by another action, could have followed and recovered the proceeds of the land. As both actions are now combined, it would seem to follow inevitably that all the parties which were necessary to maintain the two actions, must now unite in the one action which comprehends both. The general rule in equity is, that all persons interested in the subject of dispute, must be parties, because that Court seeks to arrange in a single action, all the claims arising upon the subject of controversy. In this case, it is evident, that unless the heirs at law of the ward, as well as the distributees who are represented through the administrator, are before the Court, their several rights to the fund, cannot be determined; for the fund is not sufficient to satisfy the claims of both parties—those entitled to the per-

sonal estate of the ward, and those entitled to the real estate—supposing them to be different persons.

If the administrator plaintiff had alleged and shown a deficiency of personal assets in his hands to discharge the debts of his intestate and had made the heirs at law of the ward parties to this action, he would be entitled to condemn all or so much of the real fund, as would be necessary for that purpose. But he makes no allegation of want of assets, and his only claim to recover this fund is, that he is the proper party to recover and pay it over to the heirs at law. But as in this Court the real fund is land, and descendible as such, why should the heirs, in this more than in other cases of descent, be compelled to reach it in this round about way, instead of directly and immediately from the intestate? And suppose there had been no administration, or he had refused or delayed to bring an action for the recovery of this fund, are the heirs thereby to be hindered or delayed in coming to their inheritance? The heirs do not claim through but above the administrator and immediately from the intestate; and whoever holds the real fund at the death of the ward, holds it for the heirs and is directly amenable to their action to recover it. If the heirs had brought the action against the defendant, Robinson, the administrator of the ward would have been a necessary party, as a representative of the creditors and distributees of the intestate. For the same reason the heirs are necessary parties to this action, that the rights of all may be adjudicated in the same action, instead of putting the heirs, as it may be, to another action against the administrator of the ward.

It does not appear why the action was not brought upon the guardian bond, instead of the bond of the administrator. As the only point presented by the appeal is that which we have discussed, we can notice no others. We think the Court did not err in refusing to give the plaintiff judgment

for the amount of the entire fund, and if nothing else appeared, we would affirm the judgment. But as it also appears that the heirs at law of Margaret A. Blackwelder are necessary parties to the action and may be prejudiced by the affirmance of the judgment, we think it best and least expensive, not to dismiss the action for want of proper parties, but to vacate the judgment and remand the case, to the end that the heirs at law, aforesaid, may be made parties plaintiff or defendant, with leave to amend the pleadings as far as the new parties are concerned, and that the case may be then proceeded with according to law. The accounts as reported and affirmed will not be re-opened. The plaintiff will pay the costs of appeal.

The judgment is vacated and the cause remanded.

SMITH, C. J. *Dissenting.* While concurring with the Court in the disposition made of the case, I cannot assent to the reasoning by which the result was reached.

L. B. Krimmenger as guardian to the plaintiff's intestate who died before attaining twenty-one years of age, as part of his ward's estate, received a sum of money arising from a sale of her land and paid to him by order of the Court directing the sale. This fund as well as the other personal estate of the ward was mismanaged and lost. The guardian died leaving a will, and the defendant, T. H. Robinson, was appointed administrator *cum testamento annexo* of L. B. Krimmenger, and gave the bond on which the action is brought against him and his sureties.

The defendant, Robinson, as such administrator took possession of the personal estate of the guardian and received assets sufficient to discharge his liabilities to the ward. The question is, can the plaintiff recover in damages the value of the fund derived from the sale of the land, lost by mismanagement of the guardian, or must the suit to recover this part of the estate be brought on the relation of the heirs at law of the intestate infant ?

In my opinion the plaintiff is entitled to recover damages for the entire estate lost, without discrimination as to the sources from which any part of it was derived. It is not disputed upon repeated and uniform adjudications in this State, and various statutory provisions, that money arising from the sale of an infant's land, until changed by some valid act of conversion after the infant attains majority, retains the qualities and properties of the land it represents, for the purpose of ascertaining to whom under the law it rightfully belongs. But this doctrine applies only to *claimants* of the fund. Its nature as personal property is not changed, nor is the responsibility of the guardian for its care and management different from that which attaches to other personal property. Accordingly, in two of the cases cited at the bar, the fund treated as land, still in the view of a Court of Equity, had been recovered or reduced to possession by the administrator, and was pursued in his hands by the heir, and charged with a trust in his favor.

Although legal and equitable rights are under our present system administered by the same Court, yet the essential distinction in those rights and the remedies to enforce them, cannot be lost sight of without introducing perplexity and uncertainty. This action is on the administration bond to recover *damages* for a breach of trust, and should be controlled by those general rules that formerly governed a legal proceeding. No case has been called to my attention where an heir at law has prosecuted an action to recover the fund, or to secure his interest in it, until it has been reduced to possession or subjected to the control of the personal representative. The right to sue is essentially a personal right vesting in the infant, and at her death transmitted to her administrator, who represents her as to all her rights of property, except her specific interest in land remaining such until her death, and which thus descends to her heirs at law. The damages arising from the breach of trust and

measuring the value of the property lost and the injury sustained, are personal, and the right to recover them vests only in the person who succeeds to all the choses in action that vested in the infant. To whom the fund shall be paid, and the respective claims of creditors, distributees and heirs thereto, are matters which must be afterwards ascertained and adjudged.

This view is in my opinion fully sustained by an express adjudication of this Court in *Latta* v. *Russ*, 8 Jones, 111.

The facts of that case are these: Richard Crabtree died, having made his will and devised certain of his lands to Thomas J. Latta and wife and others. The executors named in the will renounced, and his widow was appointed administratrix with the will annexed. She filed her petition in the proper Court, and obtained license to sell the devised lands for payment of debts. There was a surplus arising from the sale of the land in her hands when she died. The defendant, Russ, then became her administrator, and administration d. b. n. with the will annexed, was granted to the relator. The action was brought by the administrator d. b. n. upon the bond of the administratrix, against her administrator and sureties, to recover the fund derived from the sale of the land. This was resisted by the defendants upon the ground that the surplus arising from the sale of the land, made assets, belonged to the devisees, and that they alone as relators coulds ue. The Court declared that the objection that the action cannot be maintained by the administrator d. b. n. was not tenable, and PEARSON, C. J., in delivering the opinion, says: " Where an administrator dies before he has completed the settlement of the assets derived from real estate by paying debts and paying over the excess to the devisees or heirs at law, this unfinished duty cannot be performed by his administrator, for there is *no privity* between him and the devisees and heirs at law ; and it is consequently necessary that both of the deceased per-

sons should be represented, so that the representative of the administrator should pay over the fund to the representative of the first intestate, whose duty it is made to complete the administration by paying off all the debts, and paying *over the excess* to such persons as would be entitled to the land, had it not been sold. In other words, between the administrator d. b. n. of the first intestate, and his creditors and devisees or heirs, there is a *privity;* whereas there is no privity between the latter and the administrator of the first administrator."

This lucid statement of the true doctrine would seem to be decisive of our case, and to render further discussion needless. It may not however be inappropriate to notice some of the many difficulties to be encountered in permitting the heir-at-law to sue and recover this money. If the specific fund is to be treated as land (except for the purposses already stated) then its loss or destruction, like the destruction of houses on the infant's land, would obstruct or defeat the descent. The right to recover damages in the one case as in the other, is a personal right vesting in the infant and to which none but his representative succeeds at her death. Undoubtedly the heir has no claim for the destroyed houses, and why should she have to moneys lost, if they are to be treated as land merely?

But in truth the fund is but a given sum of money which itself, or in case of its loss, the substituted damages which measure its value, though its identity be lost, continues invested with the same attributes and goes to the same heir-at-law when reduced into possessson by the person, who under the law must pursue and recover it for the benefit of the party entitled thereto.

A further suggestion may be made in regard to the interest of creditors. For the space of two years after the grant of letters of administration or testamentary, the lands remain liable to debts and is inalienable by the heir or devisee. If conveyed afterwards, the title passes but the heir

or devisee is chargeable with the proceeds of sale. During the period mentioned, and afterwards before sale, the representative may by proper proceedings convert the land into assets to pay debts, and if necessary, it is his duty to do so. This duty is enforced and secured by his bond. But this protection would be lost if the heir or devisee can sue and get possession of the fund into which the land has been converted and apply it to his own use; and in this respect his advantages are greater than if there had been no conversion, and to the same degree prejudicial to creditors.

The correct rule applicable to the case in my opinion is this;—The personal representative must reduce to possession the entire personal estate, and if necessary, sue for and recover debts and damages to which his testator or intestate may be entitled; and in an action brought for this purpose, an inquiry into the source from which the funds sought to be recovered were derived, is wholly immaterial and irrelevant. The only issue between the parties is as to the defendant's *liability*, and in what *amount*, to the deceased or his representative to whom the right of action is transmitted. When the fund has been recovered, it then becomes important to ascertain whether any or what part arises from the sale of land, and who is the heir or devisee to whom, if not required for purposes of administration, it should be paid.

This is a legal proceeding to recover damages for the breach of a legal obligation and should be conducted substantially upon the principles which governed in an action at law, modified under the new practice so far only as is necessary to secure and protect those equitable rights which formerly could only be asserted in a different tribunal. The judgment of the Court is entirely proper reversing the decision below and transmitting the cause in order to an amendment making the heir at law a co-plaintiff. So that if administration has been completed, the money recovered which represents the land may pass at once into the hands

CLOMAN *v.* STATON.

of the heir at law who is entitled to it. In this prompt and summary disposition of the whole matter in a single proceeding, we have an illustration of the practical advantages of the new system over the old, under which the heir would have been compelled to seek redress by instituting a new suit in another Court.

PER CURIAM.     Judgment vacated and cause remanded.