JOHN ALEXANDER and wife and others v. JOHN WOLFE'S Executors.

*Executors and Administrators—Parties—Suit to recover proceeds of land sale.*

1. An administrator having in his hands a fund derived from the sale of real estate, holds it for the heirs of the intestate, and, upon the death of such administrator, suit to recover the same may be brought by the heirs alone against his personal representative.

2. But where, in addition to the proceeds of sale of real estate, there is also in his hands a fund derived from other sources, the administrator *de bonis non* of the original intestate should become a co-plaintiff with the heirs (unless as in this case they release their claim to the personal estate) in order to a recovery, in one action, of the full amount due both.

   (*Allison* v. *Robinson,* 78 N. C., 222, cited and approved).

CIVIL ACTION tried on exceptions to a referee's report, at Fall Term, 1882, of MECKLENBURG Superior Court, before *Graves, J.*

In the year 1858, John Wolfe, the defendant's testator, was appointed guardian of Dorcas W. Lee, an infant, and as such received, besides a considerable personal property from other sources, from the clerk and master in equity her share of the proceeds of sale of certain real estate, made under a decree of court for partition between herself and other tenants-in-common. The sums so received were $620 on January 10, 1861; and $325 in confederate currency of the scaled value of $108.33 on January 15, 1863.

On April 30, 1867, Dorcas, the ward, died unmarried and intestate, and letters of administration on her estate issued to her guardian. Without having administered the same, John Wolfe himself died, in the spring of the year 1880, leaving a will (since admitted to probate), in which he appointed the defendants, C. H. and W. L. Wolfe, his executors.

This action, instituted August 15, 1869, by the plaintiffs, who are the heirs-at-law of the intestate, Dorcas, is prosecuted for an account of the testator's administration of so much of the trust-fund as was derived from the sale of the intestate's land,· and to recover what is due from Wolfe's estate.

The defendants demurred to the complaint for an assigned misjoinder of two incompatible causes of action, which demurrer was overruled on the former appeal to this court (83 N. C., 272) and the cause directed to proceed.

Thereupon an order of reference to the clerk was entered in the superior court, directing him to state the guardian account and ascertain what was due from the testator in that capacity.

At fall term, 1882, the referee returned his report, charging the guardian only with the money paid him by the clerk and master, derived from the real estate of the intestate, and reducing the last sum to its equivalent in gold, according to the legislative scale; and allowing various expenditures, set out in detail in the

account, and among them, payments of $86, to three of the plaintiffs, each, in part of their several shares of the fund.

The defendants filed several exceptions to the report, the first being to any further proceeding in the cause until the administrator *de bonis non* of the intestate, Dorcas, is made a party, his presence being necessary to a full adjustment of the administration account, and to avoid the accountability to him of the personal estate. To meet this objection, the plaintiffs' counsel entered a formal *retraxit* of any claim for the personal estate on the part of the plaintiffs.

This exception was sustained and the others overruled, and thereupon the plaintiffs demanded judgment for the sum ascertained to be due by the referee, which was refused, and they appeal. The defendants also appeal from the refusal to allow their other exceptions.

*Messrs. Jones & Johnston*, for plaintiffs.
*Messrs. Wilson & Son*, for defendants.

SMITH, C. J., after stating the case. The inquiry is suggested *in limine*, and before entering upon an examination of the sufficiency of the objection, why this defect of parties was not assigned with the other causes of demurrer, instead of being reserved until after the account has been taken and reported. Nor do we see its pertinency in the form of an exception to the report. But waiving its manifest irregularity in the method adopted for presenting the objection, we are of opinion that it has no force, and ought not to have been entertained.

It is settled by the decision in *Allison* v. *Robinson*, 78 N. C., 222, that whoever holds the fund derived from real estate of the deceased infant, holds it for the heirs, and is directly amenable to their action to recover it. "Suppose there had been no administration," remarks BYNUM, J., speaking for the court, "or he (the administrator) had refused or delayed to bring an action for the

recovery of this fund, are the heirs to be thereby hindered or delayed in coming to their inheritance?"

In like manner, upon the former appeal it is said, that while the proceeds of sale of the real estate "*may be recovered by the heirs-at-law without the presence of an administrator de bonis non,*" as declared in the opinion in *Allison* v. *Robinson,* such administrator ought to become a co-plaintiff "in order to the recovery of the full amount due to both in one action, and the defendant not be harassed with two suits and the taking the same account a second time."

The *retraxit* in releasing all claim to the personal estate on the part of the plaintiffs, and confining the action to the pursuit of the money into which the real estate has been converted, dispenses with the necessity of making the administrator a party whose only recourse is upon the personal estate. It matters not that the defendants are not relieved, but remain liable to account for this estate to such administrator, when appointed: this will be the only responsibility resting upon them. The severance of the fund enables the parties entitled to the several parts to pursue and recover what is due them, and there will not be successive harassing suits for the same fund. There is no rule of pleading or practice that forbids this to be done.

If, then, the other exceptions are rightfully overruled, as the sum reported has been derived exclusively from real estate, and the personal estate has been administered according to the allegations in the complaint, and the debts and expenses incidental thereto discharged, so that the personal representative, should there be one, has no claim upon the fund, the plaintiffs should have had judgment according to their demand. We proceed, therefore, to consider the disallowed exceptions of the defendants brought up by their appeal.

The exceptions expanded into many forms, and, presented in different aspects, may be condensed into a smaller number:

1. The defendants except to the exclusion of a claimed credit of $700, which they allege, as trust-money, was part of a loan of

51

two thousand dollars to one S. A. Davis, for securing which his note with one William T. Still as surety, was taken on August 26, 1863.    The note produced bears a credit endorsed of $1,000, bearing date on the 29th of October following.    The residue of the debt was lost by the insolvency of the debtors and the delay in collecting; and much of the testimony taken relates to the alleged delinquency of the testator in making efforts to enforce it during his guardianship and subsequent administration of the intestate's estate.    The note is drawn payable to him as guardian, and it is contended that $700 of the trust-fund of the ward's money was thus invested and lost, for which there ought to be a credit in the testator's account.

Without adverting to the legal consequences of this comming-ling of trust-money with that of the guardian in a single loan, and the effort to throw the loss upon the infant by treating her share as remaining in the note, while in two months after the loan was made one-half of the amount was repaid by the debtor and appropriated exclusively to the guardian's own use, which present the transaction, to say the least, in no favorable aspect for him, it is a sufficient answer to the exception that it is not shown that the money was any *part of the real estate fund.*    The only testimony on the point is that of the mother of Dorcas Lee, who states that the guardian consulted her about making the loan, and she approved of it; that he subsequently showed her the note and told her "that seven hundred dollars of the money was the money of Dorcas, and the balance his own."    This does not prove that the proceeds of the land constituted any part of the ward's money thus used; and the long interval since its recep-tion is evidence tending in a contrary direction.    The claim of the credit was properly denied.

2. The defendants, insisting that the loan consisted, so far as the ward is affected, of her money paid over by the clerk and master, except, that in charging the testator the scale was not applied as of the date of the loan, as to the entire $700; and if

not, as to the sum of $325, last received from that source. This exception, depending on the preceding, must fall with it.

3. The defendants except that the referee fails to find the fact that Emma Lee, when she consented to the appropriation of the $86 paid her by the testator, was the guardian of the plaintiff, Lula. The transaction would not be relieved of a concurring misapplication of the money, in applying it to her individual debt, which cannot prejudice the right of the infant. The fact is wholly immaterial to this defence.

4. The defendants further except that certain numbered vouchers offered were rejected without an assignment of the grounds of this action on the part of the referee. But errors must by assigned by the complaining party in order to their being understood and rectified. This the defendants do not do. We cannot see, from this vague and indefinite complaint of their rejection, that any wrong was done by the referee; and unless error is shown to have been committed, we must assume there is none.

There is no error in the rulings upon these exceptions, and they are sustained. The plaintiffs are entitled to judgment.

PER CURIAM.                Judgment accordingly.